**SO ORDERED: September 3, 2013.**



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>RACEWAY MARKET SHOPS, LLC, et al[1],)<br>)<br>)<br>Debtors. )<br>_____) | Case No. 13-02408-JKC-11<br>(Jointly Administered) |

**ORDER ESTABLISHING BIDDING AND SALE PROCEDURES FOR SALE OF
DEBTORS' ASSETS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

**Recitals and Definitions**

A. Raceway Market Shops, LLC ("Raceway"), Greenwood Crossing, LLC ("Greenwood") and Riverplace Shops, LLC ("Riverplace"), the above-captioned debtors and debtors in possession (each individually a "Debtor" and collectively the "Debtors"), and Bank of America, N.A., its successors and assigns (the "Lender" and together with the Debtor, the "Proponents"), pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy

---

[1] The Debtors in these cases are Raceway Market Shops, LLC (Case No 13-02408-JKC-11); Greenwood Crossing, LLC (Case No. 13-02413-JKC-11); and Riverplace Shops, LLC (Case No. 13-02414-JKC-11), and this Order applies to all three of the Debtors.

Code") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), filed a motion (the "Motion")[2] for entry of an order (the "Bidding Procedures Order") approving:

    1.    Bidding and sale procedures to be effective no earlier than August 1, 2013 in connection with the sale of Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "Sales") and (ii) certain dates and deadlines in connection with such sale procedures and approving the form and manner of notice to interested parties.

    B.    Raceway owns a retail center located at 9200 Rockville Road, Indianapolis, Indiana (the "Raceway Property").

    C.    Greenwood owns a retail center located at 1260 North Madison Avenue, Greenwood, Indiana (the "Greenwood Property").

    D.    Riverplace owns a retail center located at 9640 Allisonville Road, Indianapolis, Indiana (the "Riverplace Property").

    E.    Lender is the holder of first priority mortgages (subject to liens for real estate taxes) on the Raceway Property, Greenwood Property and Riverplace Property (each individually a "Property" and together, the "Properties"). Each of the Properties secure the entire indebtedness owing from each Debtor to the Lender.

    F.    "Auction" means the private auction that shall take place at such place and time as stated in the Notice of Stalking Horse Bid if more than one Qualified Bid is received by the Bid Deadline.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

2

G.  "Bid Deadline" means the deadline for submitting bids for the purchase of the Properties and/or Property.

H.  "Bidding Procedures" means the bidding procedures in substantially the same form attached to the Motion as **Exhibit 1.**

I.  "Breakup Fee" shall have the meaning ascribed to it in Paragraph 125 below.

J.  "Broker" means a real estate broker approved by Lender.

K.  "Indebtedness" means the total amount due and owing to the Lender for its loans on the Greenwood Property, Raceway Property and Riverplace Property.

L.  "Initial Marketing Period" means a period up to ninety (90) days after August 1, 2013 where the Broker shall market the Properties for sale.

M.  "Final Marketing Period" means an additional thirty (30) days after the Initial Marketing Period where Broker will solicit overbids for a bid higher than the Stalking Horse Bid(s).

N.  "Net Proceeds" means the gross proceeds of the sale of each Property less funds needed to pay the costs of the sales including commissions, any approved, unpaid administrative expenses and a sum of money equal to three percent (3%) of the allowable, general unsecured claims, excluding the claims of insiders to the debtors as defined in U.S.C. § 101 (31) and any unsecured claims of the Lender (the "Unsecured Creditors Carve-Out"). If, after deductions to pay the aforementioned expenses and after payment in full of the Indebtedness to the Lender, there are excess sale proceeds, said proceeds are to be paid to the appropriate Debtor to be used for payments to creditors.

O.  "Notice of Stalking Horse Bid" means the notice in substantially the same form attached to the Motion as **Exhibit 3.**

P. "Purchase Agreement" means the purchase and sale agreement attached to the Motion as **Exhibit 4**, subject only to minor modifications by the Stalking Horse Bidder (the Purchase Agreement as modified is referred to as the "Stalking Horse Purchase Agreement").

Q. "Qualified Bid" is a written, irrevocable offer made by a Qualified Bidder to purchase the Raceway Property that:

1. is received by the parties set forth in the Notice of Stalking Horse Bid;

2. is received no later than the Bid Deadline;

3. is an all cash bid;

4. is for an amount equal to at least $25,000 greater than the Stalking Horse Bid for each Property for which a bid is submitted or $75,000 greater than the Stalking Horse Bids submitted for all three Properties;

5. is enclosed with a clean, signed copy of the Purchase Agreement and a blacklined copy reflecting any changes; and

6. is accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as an earnest money deposit (the "Deposit"), which Deposit shall be used to fund a portion of the purchase price provided for in the bid.

R. "Qualified Bidder" means a person or entity that has provided Proponents with an executed confidentiality agreement and with information sufficient to demonstrate to the Proponents' reasonable satisfaction that such person or entity has the financial wherewithal to consummate a sale transaction. Notwithstanding anything to the contrary: (i) Lender is deemed to be a Qualified Bidder; (ii) Lender retains at all times the right to credit bid up to the full amount of its cross-collateralized debt, and therefore is not required to submit a cash bid; and (iii) Lender is not required to furnish any Deposit with respect to any Stalking Horse Bid or Overbid.

S.      "Sale Hearing" shall have the meaning ascribed to it in Paragraph 35 below.

T.      "Stalking Horse Bids" shall have the meaning ascribed to it in Paragraph 4, below.

U.      "Stalking Horse Bidders" shall have the meaning ascribed to it in Paragraph 4, below.

V.      "Winning Bidder(s)" means the Stalking Horse Bidder(s) if an Auction is not held. Alternatively, if an Auction is held then at the conclusion of the Auction, the Proponents shall announce the bid made pursuant to the Bidding Procedures Order that represents, in Proponent's reasonable discretion, the highest or otherwise best offer for the Properties (the "Successful Bid"), and the bidder(s) who submitted the Successful Bid(s) shall be the "Winning Bidder(s)."

W.      Upon consideration of the Motion and pursuant to section 363 of Title 11 of the Bankruptcy Code, as supplemented by Rules 2002, 6004 and 9014 of the Bankruptcy Rules, and the Court having determined that the relief provided in this Order is in the best interest of the Debtors, the estate, creditors and other parties-in-interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and the agreements of the parties as recited above; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is **FOUND AND DETERMINED THAT**:

X.      This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and Debtors have consented to the jurisdiction of this Court for purposes of the sale of the Properties.

Y.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

Z.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

AA.  Good and sufficient notice of the Motion and the relief sought has been given under the circumstances, and no further notice is required. A reasonable opportunity to object or be heard regarding the relief sought has been afforded to parties in interest.

BB.  The Notice of Stalking Horse Bid is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the deadline to submit a bid and the time and place of any auction and the Bidding Procedures to be employed.

CC.  The Motion has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures and the Notice of Stalking Horse Bid.

DD.  The Bidding Procedures are reasonably designed to maximize the value to be achieved for the sale of the Properties.

EE.  The entry of this Order is in the best interests of the Debtors, the estates, creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted.

2. All objections to the Motion or the relief granted that have not been withdrawn, waived or settled, and any reservations of rights are overruled and denied on the merits.

3. The Bidding Procedures are approved and incorporated into this Order. The Proponents are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4. Lender is authorized to select one bidder and one bid for each of the Properties during the Initial Marketing Period and any extended marketing period to serve as the stalking horse bidders. Alternatively, Lender may designate itself as the stalking horse bidder for any Property by submitting a credit bid. The chosen bidder(s) are referred to as the "Stalking Horse Bidder(s)" and the chosen bid(s) are referred to as the "Stalking Horse Bid(s)." A bidder may bid on one or more of the Properties

5. Lender is authorized to apply the Net Proceeds from any Sale (or the amount of any credit bid) against the Indebtedness in whatever manner it deems appropriate in its sole discretion, but not to exceed the total amount of the Indebtedness owed to Lender by the three Debtors.

6. Lender is authorized to credit bid on one or more of the Properties up to the Indebtedness.

7. Lender is authorized to apply the Net Proceeds from any sale of the Property to its indebtedness owing for the Property in its sole discretion and if there are excess proceeds the Lender may apply in its sole discretion the excess proceeds from any sale to the Indebtedness owing on either of the other remaining Properties.

8. The deadline for submitting bids for the Properties (the "Bid Deadline") shall be set forth in the Notice of Stalking Horse Bid.

9. Proponents may file and serve a Notice of Stalking Horse Bid for each Property or may send out a Notice of Stalking Horse Bid for two or all three of the Properties depending on when the Lender selects the Stalking Horse Bidder(s) for the Properties.

10. Debtor may sell the Properties by conducting an Auction in accordance with the Bidding Procedures, subject to subsequent order of the Court approving any sale. If Qualified

7

Bids are timely received by Proponents in accordance with the Bidding Procedures, the Auction shall take place as set forth in the Notice of Stalking Horse Bid. If, however, no Qualified Bids are received by the Bid Deadline, then the Auction will not be held and the Stalking Horse Bidder will be deemed the Winning Bidder.

11.  Proponents may hold a separate Auction for each Property or may hold an Auction for two or all three of the Properties depending on when the Lender selects the Stalking Horse Bidders for the Properties.

12.  Each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

13.  The Auction will be conducted openly.

14.  Bidding at the Auction will be recorded in a manner that is agreed to by Proponents that will leave a record of the proceedings.

15.  If an Auction is held and any Stalking Horse Bidder is not the Winning Bidder at the Auction, such Stalking Horse Bidder (other than the (1) Debtor or its designee or assignee; or (2) Lender or its designee or assignee) shall be entitled to a fee of $25,000 (the "Breakup Fee").

16.  On or before ten (10) business days after the selection of the Stalking Horse Bidder(s) and Stalking Horse Bid(s), the Proponents will cause (i) a completed copy of the Notice of Stalking Horse Bid, including a copy of the Stalking Horse Purchase Agreement; and (ii) a copy of this Order to be sent by first-class mail postage prepaid, to the following: (a) the Office of the United States Trustee for the Southern District of Indiana Indianapolis Division; (b) all known taxing authorities and other governmental agencies having jurisdiction over the Properties; (c) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (d) all persons known to have asserted any lien, claim,

8

encumbrance, right of first refusal, or other interest in or upon the Properties; and (e) all persons known to have expressed an interest in acquiring the Properties within the last six months.

17. The Notice of Stalking Horse Bid is approved.

18. Except as otherwise provided in this Order, the Lender may, in its reasonable discretion: (a) determine which bids are Qualified Bids; (b) determine which Qualified Bid is the highest or otherwise best proposal for the purchase of the Properties and which is the next highest or otherwise best proposal; (c) reject any bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of the Debtors' estates; (d) waive terms and conditions set forth in this Order with respect to all potential bidders; (e) impose additional terms and conditions with respect to all potential bidders; and (f) adjourn or cancel the Auction without further notice.

19. Except as otherwise provided in this Order, but only if jointly agreed, the Proponents may, in their reasonable discretion: (a) extend the deadlines set forth in this Order; (b) make non-material modifications to the Bidding Procedures as the Proponents may determine to be in the best interest of the Debtors' estates, in their reasonable discretion; and (c) withdraw the Motion at any time with or without prejudice.

20. All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as may be announced by the Proponents, in their reasonable discretion, that are not inconsistent with this Order.

21. Debtor and Lender shall be bound by the Bidding Procedures, and shall jointly participate in the sale process in accordance with the Bidding Procedures.

22. Debtor shall not file any pleading in this case seeking to modify, condition or limit Lender's right to credit bid on the Properties up to the full amount of the Indebtedness.

23. On or before closing of the sale of the Properties, Debtors shall pay all pre and post-petition real property taxes due and owing with respect to the Properties from their debtor in possession bank accounts (collectively, the "Operating Accounts");

24. On closing of the sale of the Properties, subject to the Net Proceeds provision in Paragraph N above, any cash collateral remaining in the Operating Accounts shall be used first for the payment of trustee fees, second for the payment of any accrued but unpaid invoices pertaining to operation of the Properties, third for the payment of the Unsecured Creditors Carve-Out and any remaining amounts in the Operating Accounts shall be delivered to Lender via wire transfer upon written instructions from Lender's counsel.

25. Debtors shall provide Lender with their annual statements for 2010, 2011 and 2012 within five (5) business days from entry of this Order.

26. Debtors shall provide Lender and Broker with a rent roll and monthly operating reports, which will include a profit and loss statement for 2013 on or before the 20th of each month beginning with August of 2013 and through to the date of closing of the sale of the Properties.

27. Debtors shall provide Lender with copies of any and all title policies, equipment warranties and operating manuals, architectural plans, environmental reports, surveys and appraisals of the Properties in Debtors' possession within five (5) business days after entry of this Order.

28. Debtors shall voluntarily deliver possession of the Properties to the Winning Bidder(s) on the day of closing of the sale(s) of the Properties.

29. Debtors shall terminate any and all service contracts associated with the Properties as of the day of closing if requested by the Winning Bidder(s).

30. Debtors shall cooperate with the Winning Bidder(s) in notifying tenants of the Properties of the sale and turnover of the Properties through "Hello" and "Goodbye" letters approved by Lender.

31. Debtors shall not interfere with tenants contracting with the Winning Bidder(s) and shall not solicit tenants to other properties owned by their affiliates or third parties.

32. All leasing files will remain at the Properties or be delivered to the Winner Bidder(s) at closing by the Debtors.

33. Debtors shall cooperate with the Winning Bidder(s) in transitioning all utilities and related deposits for the Properties and otherwise perform such duties as may be required under the terms of the Purchase Agreement.

34. As long as the Lender is in compliance with the Settlement Agreement it entered into with the Debtors and Craig Johnson, as guarantor, Debtors agree that they will not file any new or amended plans of reorganization that are contrary to the Motion or the Bidding Procedures without Lender's consent.

35. A hearing to approve the sale of the Properties pursuant to section 363 of the Bankruptcy Code shall be held no earlier than November 1, 2013 (the "Sale Hearing").

36. This Order does not apply to the Raceway Property if and only if upon separate motion filed under section 363 of the Bankruptcy Code the Court approves the purchase and sale agreement for the Raceway Property entered into by Raceway on July 11, 2013 and the sale closes.

37. This Order shall be effective immediately upon its entry.

38. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

###

Case 13-02408-JKC-11    Doc 122    Filed 09/03/13    EOD 09/03/13 14:10:58    Pg 12 of 12